## UNITED STATES DISTRICT COURT
## SOUTHERN DISTIRCT OF NEW YORK

| | |
|---|---|
| JOHN Y. TANG,<br><br>                          PLAINTIFF,<br><br>                     V.<br><br>JIANJUN QIAO, SHILAN ZHAO, YUXIN QIAO, HSBC BANK USA, N.A.,  HSBC CANADA, HSBC HONG KONG, HSBC HOLDINGS PLC, UBS BANK USA,  UBS AG SINGAPORE BRANCH,  UBS GROUP AG, U.S. BANK N.A., GENG & ASSOCIATES P.C., TING GENG, SYLVIA P. TSAI AND JANE DOE,<br><br>                          DEFENDANTS. | Civil Action No. 1:23-cv-8760-DEH<br><br><br>**AMENDED COMPLAINT AND JURY DEMAND** |

John Y. Tang, by and through his undersigned counsel, brings this action against Defendants Jianjun Qiao, Shilan Zhao, Yuxin Qiao,  HSBC Bank USA, N.A., HSBC Bank Canada, HSBC Hong Kong, HSBC Holdings PLC, UBS Bank USA,  UBS AG Singapore Branch, UBS Group AG, U.S. Bank N.A., Geng & Associates P.C., Ting Geng, Sylvia P. Tsai and fictious Defendant Jane Doe.

Plaintiff makes the following allegations based upon information and belief, except as to the allegations specifically pertaining to himself, which are based on personal knowledge.

## **INTRODUCTION**

1.      Plaintiff asserts claims for Civil RICO, RICO conspiracy, fraud, conspiracy of fraud, aiding and abetting fraud, breach of contract, promissory estoppel, unjust enrichment, quantum meruit and intentional infliction of emotional distress against Defendants based on Defendants' unlawful conducts dated as early as November, 2011 and ongoing up to date.

1

## JURISDICTION AND VENUE

2.      The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 because Plaintiff's cause of action is pursuant to the Federal Civil RICO, 18 U.S.C. § 1961, et seq.

3.      The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 because this action is between a citizen of a state and a subject of a foreign state and between citizens of different states and the amount in controversy exceeds $75,000.

4.      The venue is proper in this District under 18 U.S.C. §§ 1965(a) and (b) and 28 U.S.C. §§ 1391(b)(2) and (3). Several Defendants are the resident of and have the principal place of business in State of New York and a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated in this District.

## PARTIES

5.      Plaintiff John Y. Tang ("Plaintiff") is a citizen and resident of the State of New Jersey. Plaintiff was an attorney for and business partner of Defendant Jianjun Qiao in 2011 and 2012.

6.      Defendant Jianjun Qiao, also known as Feng Li, Steven Li, Paul Pan and Shaoqing Wei ("Qiao"), is a citizen of People's Republic of China ("China") and a former Chinese government official. Defendant Qiao is a fugitive wanted by Chinese authority for corruption and for having stolen RMB700 million, approximately $110 million from state fund before 2011[1]. In 2011, Defendant Qiao escaped from China and arrived in the U.S. In July, 2014, Defendant Qiao was indicted with conspiracy to commit immigration fraud, international transport of stolen funds and conspiracy to commit money laundering. A superseding indictment against Defendant Qiao

---

[1] The conversion is based on exchange rate in November, 2011.

returned in December 2018 charged him with conspiracy to commit immigration fraud and international transport of stolen money, conspiracy to commit money laundering, and three counts of engaging in financial transactions in criminally derived property. After being a fugitive of the U.S. for more than 5 years, Defendant Qiao was extradited from Sweden to the U.S. on May 29, 2020. On December 20, 2021, Defendant Qiao was convicted of immigration fraud and interstate and international transport of stolen money. [2] Defendant Qiao currently lives in Alhambra, CA.

7.    Defendant Shilan Zhao ("Zhao") is a citizen of China and resides at 7615 113th Avenue Se, Newcastle, WA 98056. Defendant Zhao was Defendant Qiao's former wife.  Together with Defendant Qiao, Defendant Zhao was indicted with immigration fraud, conspiracy to commit immigration fraud, international transport of stolen funds and conspiracy to commit money laundering. In January 2017, Defendant Zhao pleaded guilty to the charge of immigration fraud.

8.    Defendant Yuxin Qiao ("Y. Qiao") is Defendant Qiao's son and lives in Canada.

9.    Defendant HSBC Bank USA, N.A. ("HSBC USA") is a financial service company with headquarters at 452 Fifth Avenue, New York City, New York, USA.

10.    Defendant HSBC Bank Canada ("HSBC Canada") is a financial service company in Canada with headquarters at 885 West Georgia Street, Vancouver, British Columbia V6C 3E9.

11.    Defendant HSBC Hong Kong ("HSBC HK") is a financial service company in Hong Kong Special Administrative Regions of China with headquarters at 1 Queen's Road Central, Hong Kong SAR.

12.    Defendant HSBC Holdings PLC ("HSBC PLC") is a United Kingdom financial service company with headquarters at 8 Canada Square, London, England, UK. Defendant HSBC

---

[2] United States District Court, Central District of California, Docket No. 2:14-cr-00384-SVW.

PLC is the parent company of Defendants HSBC USA, HSBC Canada and HSBC HK.

13.     Defendant UBS Bank USA ("UBS USA") is a financial service company with headquarters at 1285 Avenue of the Americas, New York, NY 10019.

14.     Defendant UBS AG Singapore Branch ("UBS Singapore") is a financial service company in Singapore with headquarters at 9 Penang Road, Singapore 238459.

15.     Defendant UBS Group AG ("UBS AG") is a financial service company in Switzerland with headquarters at Bahnhofstrasse 45, 8001 Zurich, Switzerland. Defendant UBS AG is the parent company of Defendants UBS USA and UBS Singapore.

16.     Defendant U.S. Bank N.A. ("U.S. Bank") is a financial service company with headquarters at 800 Nicollet Mall, Minneapolis, MN 55402.

17.     Defendant Geng & Associates P.C. ("Geng PC") is a law firm at 39-07 Prince St, Suite 4B, Queens, NY 11354.

18.     Defendant Ting Geng ("Geng") is the principal of Defendant Geng PC.

19.     Defendant Sylvia P. Tsai ("Tsai") is a partner at Defendant Geng PC.

20.     Fictious Defendant Jane Doe is Defendant Qiao's wife, who is a citizen or resident of Sweden.

## FACTS

### A.     Qiao Family

21.     On November 9, 2011, Plaintiff received a phone call from Defendant Qiao. Defendant Qiao introduced himself as Steven Li, a businessman from China.  That was a lie. In fact, Defendant Qiao was a former Chinese government official on the run and was at that time a wanted fugitive by Chinese authority for corruption and for stealing $110 million state funds. Defendant Qiao did not speak English. He asked about general questions on investment in the

U.S. and immigration to Caribbean countries. Defendant Qiao could not travel due to medical condition and asked Plaintiff to travel to Los Angeles to meet him with all expenses paid by Defendant Qiao.

22.     On November 11, 2011, Plaintiff met Defendants Qiao, Zhao and Y. Qiao in Los Angeles. Defendant Qiao introduced Defendant Zhao as his wife but they were in fact divorced at that time. Defendant Qiao said he owned a few companies in China and had investment, mostly commercial and residential real properties in China, Hong Kong, Singapore, New Zealand, Canada and U.S. and was looking for investment opportunities in the U.S., Europe and Caribbean countries.

23.     Plaintiff inquired about the source of money, Defendant Qiao lied  that he made a great fortune in stock market in China and Hong Kong, In fact Defendant Qiao stole that money when he was the director of the Zhoukou Municipal Grain Reserve (the "Zhoukou Storehouse") for the Henan Provincial Branch of the Central Grain Reserve in China. Zhoukou Storehouse was a Chinese government entity in Henan Province responsible for purchasing and selling grain in an area of approximately 4,500 square miles. Defendant Qiao has caused fraudulent transactions to be conducted for grain belonging to the Zhoukou Storehouse and has caused proceeds of those transactions that belonged to the Zhoukou Storehouse to be transferred out of China for Defendants Qiao, Zhao and Y. Qiao's own benefits.

24.     When Plaintiff asked Defendant Qiao why he wanted to leave China, Defendant Qiao lied that he had business disputes with relatives of a high-ranking Chinese government official and did not want to live in China.

25.     As for the purposes of obtaining citizenship in Caribbean countries, Defendant Qiao stated that he and his family had green cards but were not interested in U.S. citizenship and

he was considering citizenship in Caribbean countries for low tax and a backup option. It was a lie because the purpose for citizenship in Caribbean countries is Defendant Qiao feared the U.S. government might be after him on request from Chinese government and those countries have no extradition treaty with China.

26.     Plaintiff and Defendants' meeting went well. Defendant Qiao asked Plaintiff to be his personal lawyer and business partner and said he would make Plaintiff a very rich man. Plaintiff explained to Defendant Qiao there was ethical considerations for Plaintiff acting as counsel and business partner at the same time. Defendant Qiao could not care less and said that was all right. Plaintiff then accepted the offer. Defendant Qiao agreed to pay Plaintiff the legal fees and additionally 7% of the investment amount as the fees for investment advisory services. Defendant Qiao promised to pay Plaintiff timely and generously and promised additional $200K bonus on the successful obtainment of citizenship in Caribbean countries.

27.     To prove his bona fides, Defendant Qiao asked Defendant Y. Qiao to log into HSBC online banking and showed Plaintiff the multimillion-dollar cash balance. Defendant Qiao said it was just one of his "small" accounts. Defendant also stated he is HSBC Premier client and UBS private banking client and maintain accounts in those banks at many countries.

28.     A few days later on November 16, 2011, in order to induce Plaintiff to provide services, Defendant Qiao made two wire transfers to Plaintiff in the amount of $45,762.23 and $46715.61 from his account 29XXXXXX1150 with Defendant HSBC Canada as the initial payment for fees. On November 22, 2011, Defendant wired $44,676.45 from the same account to Plaintiff as the fees payment. Defendant Qiao has not made any more payment for Plaintiff's services since then.

29.     Plaintiff thought that it was a good opportunity to work with Defendant Qiao, a

person of ultra-high net worth and in need of legal and investment help. Plaintiff did not know he inadvertently became part of Defendant Qiao's criminal scheme to hide stole money from pursuing authorities. By showing to other people that Plaintiff, an U.S. citizen and an attorney in the U.S., as his partner, Defendant Qiao used Plaintiff to paint legitimacy and credibility onto his criminal conducts, especially in Caribbean countries.

30.     The first thing Defendant Qiao wanted Plaintiff to handle is the purchase of Sparrow Lakes Gold Club, a golf course and club in Welland, Ontario, Canada.

31.     Defendant Qiao also asked Plaintiff to handle the real estate development project near La Barqueta, Guarumal, Panama (the "Panama Project") with an initial investment of $7 million and an additional $17.5 million to follow.

32.     Soon after the meeting in Los Angeles, Plaintiff and Defendant Qiao traveled together to Panama for a few times. They met the project team, the lawyers and the banks in Panama City. They incorporated an investment company Ping An S.A. in Panama City and open a business bank account at Global Bank, Account No. 02-333-001XXX-X (the "Panama Account"), for which Plaintiff was named as the President, sole corporate officer and the signatory of bank account because the bank would only accept the U.S. passport.

33.     On or around November 20, 2011, Defendant Qiao told Plaintiff that he tried to wire some money to Panama for the Panama Project but was returned by the receiving bank. Defendant Qiao asked if he could redirect the money to Plaintiff's attorney trust account. Plaintiff agreed.

34.     On November 22, 2011, Faith Advance Limited, a company in Singapore, wired $3.5 million from its UBS AG Singapore Branch account to Plaintiff's attorney trust account.

35.     As requested by Defendant Qiao, Plaintiff incorporated Fortuna Holding Inc.

("FHI") on November 25, 2011 and transfer the $3.5 million fund from Plaintiff's attorney trust account to FHI's bank account on December 13, 2011.

36.     Shortly after, Defendant Qiao told Plaintiff he paid for the Panama Project from other source and the $3.5 million would stay in FHI's account. Later Plaintiff and Defendant Qiao entered into an agreement under which Plaintiff would manage the $3.5 million and receive 20% of the profit as compensation. Defendant Zhao was named as a director of FHI. Defendant Y. Qiao would take part in FHI's operations.

37.     However, FHI was always in Plaintiff's sole control. Defendant Qiao, Zhao and Y. Qiao were never allowed the access to FHI's banking and financial information and were never involved in FHI's operations. As a result, FHI and its bank accounts have not been used by Defendants Qiao, Zhao and Y. Qiao for their criminal activities later.

38.     Plaintiff has worked with Defendant Qiao on several additional multimillion-dollar investment projects, including commercial property in Queens, New York, New Jersey horse farm, New Jersey hotel, warehouse in Los Angeles, CA, commercial and residential properties in Miami, Florida, hotel in Myrtle Beach, South Carolina, real estate investment in Dominican Republic., etc.

39.     Plaintiff has handled numerous immigration matters for Defendant Qiao, including possible citizenship of Panama, Dominican Republic, St. Kitts and Turks and Caicos and Defendant Qiao obtained his St. Kitts passport in October, 2012.

40.     Defendants Qiao and Zhao appeared to eagerly move money out of their possession, and with Plaintiff's help with loan documents, mortgage instruments and promissory notes, Defendants Qiao and Zhao lent large sum of money to people unknown to Plaintiff in form of mortgage and personal loans. For this purpose, between December, 2011 and October, 2012,

Defendants Qiao, Zhao and Y. Qiao made a large number of wire transfers out of their accounts with Defendants HSBC USA, UBS USA and U.S. Bank. Such activities continued until 2015 or later.

41.     Between November, 2011 and June, 2012, Defendants Qiao and Zhao have on several occasions requested Plaintiff to contact the persons at Defendants HSBC HK and UBS Singapore to facilitate outbound wire transfers to their accounts in the U.S. and Canada.

42.     Plaintiff has provided legal service to Defendants Qiao and Zhao in connection with, e.g., the return of $7 million that Defendants Qiao and Zhao transferred to a Canadian attorney for property purchase, purchase of multimillion-dollar apartment in Singapore, incorporation of company and bank account setup in Switzerland, power of attorney, transfer of title to their residence in Seattle, Washington.

43.     Plaintiff has frequently traveled to Panama, Dominican Republic, St. Kitts, China, Turks and Caicos, etc. for matters related to Defendant Qiao. Plaintiff and Defendant Qiao have spent a great deal of time together and became very close in terms of personal and business relationship. Defendant Qiao often said they were brothers and life-time partners.

44.     Defendant Qiao has been non-stop travelling and frequently requested Plaintiff's company. For instance, on February 18, 2012, Plaintiff took flight to Fort Lauderdale, Florida as requested by Defendant Qiao and drove him back to New Jersey.

45.     Defendant Qiao frequently requested money from Plaintiff to support Defendant Qiao's lavish lifestyle. Plaintiff would bring cash to Defendant Qiao every time they met. In total, Plaintiff has given Defendant Qiao approximately $165,000 in cash from the FHI funds.

46.     Plaintiff has also paid for all Defendant Qiao's living expenses, approximately $700,000 out of FHI funds, including travel expenses, gambling, entertainment, jewelry and

watches, gifts, medical expenses, meals, furniture, clothing, electronics, phone bills, transportations, condo related expenses, personal assistant in Dominican Republic, and so on.

47.     As requested Defendant Qiao, Plaintiff has wired more than $1,655,000 from FHI funds to entities in China, Panama and Dominican Republic.

48.     In March, 2012, FHI used part of the $ 3.5 million for the purchase of a Condominium ("Condo") in Flushing, New York for $710,000.00. Defendant Qiao has lived in that Condo until he left the U.S. in May, 2012.

49.     Shortly after the Condo purchase, Plaintiff and Defendant Qiao had a dispute. Plaintiff has not received any fees payment from Defendant Qiao since November, 2011. Defendant Qiao did not want Plaintiff to use the money in FHI account to pay for Plaintiff's fees but wanted Plaintiff to use that money to purchase another million-dollar condo in other company's name. Plaintiff saw this as Defendant Qiao's attempt to move money out of Plaintiff's control. Plaintiff refused and told Defendant Qiao that based on his way of spending money, there would not be enough money to pay for Plaintiff's fees. In response, Defendant Qiao repeatedly promised to pay the fees and promised to make Plaintiff a very wealthy man eventually.

50.     Defendant Qiao continued to request Plaintiff to buy several commercial properties in Queens, New York but all were rejected by Plaintiff. In the meantime, Defendant Qiao ignored Plaintiff's repeated requests for payment and instead offered equity in future investment projects in lieu of payment for Plaintiff's fees, which was rejected by Plaintiff.

51.     On May 25, 2012, Plaintiff, Plaintiff's wife and Defendant Qiao traveled to Dominican Republic for business and vacation. Plaintiff has met a few lawyers in Santo Domingo to discuss investment and immigration through investment matter. Much to Plaintiff's surprise, Defendant Qiao decided not to return to the U.S. and wanted to live there.

52.     While in Dominican Republic, Defendant Qiao wanted Plaintiff to wire $1.2 million there to purchase a house. Plaintiff told Defendant Qiao that there was no more money to spend. Plaintiff also told Defendant Qiao that Plaintiff could no longer provide services if Plaintiff's fees were not paid.

53.     In June, 2012, Defendant Qiao got into trouble in Dominican Republic. Defendant Qiao called Plaintiff for help because some gangsters trapped him with prostitutes, kidnapped him and demanded ransom. Plaintiff thought it was a hoax to trick Plaintiff into sending more money to Defendant Qiao. Plaintiff called the hotel where Defendant Qiao stayed and told them to call police.

54.     In July, 2012, Plaintiff learned that China was seeking the arrest of Defendant Qiao. On July 16, 2012, Plaintiff travelled to Dominican Republic to tell Defendant Qiao that their attorney-client and business relation must be terminated because of Plaintiff's family and business in China and Plaintiff would dissolve FHI and retain the money for part of the unpaid fees. Plaintiff agreed to handle the unfinished work until Defendant Qiao found a replacement and agreed to help Defendant Qiao as a friend as long as it was legal.

55.     On the next day, Plaintiff traveled to China to meet government officials privately arranged by a third-party in China. Plaintiff was told that there was an arrest warrant for Defendant Qiao in November, 2011 and Chinese authority was searching for him worldwide. A large number of people with connection to Qiao's case were arrested and the case was still ongoing.

56.     The last time Plaintiff met Defendant Qiao was in St. Kitts in December, 2012. Defendant Qiao was mugged and lost his new St. Kitts passport. Defendant Qiao was hysterical and begged for Plaintiff's help. Plaintiff flew there to help Defendant Qiao and told Defendant

Qiao to go back to his family in Seattle.

57.     On January 9, 2013, Defendant Qiao disappeared after speaking to Plaintiff on the phone. Defendant Qiao has not contacted Plaintiff for 7 years.

58.     In late January, 2013, Defendants Zhao and Y. Qiao came to visit Plaintiff, asking for the $3.5 million because Defendant Qiao did not give them any money. Plaintiff did not believe them and thought Defendant Qiao sent them. Plaintiff told them there was no more money and Defendant Qiao still owed a great deal of fees.

59.     Federal agents from Department of Homeland Security visited Plaintiff twice, asking about Defendant Qiao and warned that Plaintiff could be in danger if go to China because of the close association with Defendant Qiao.

60.     Plaintiff has received calls from persons who said worked for Chinese government, inquiring about Defendant Qiao.

61.      Other unknown people also contacted Plaintiff in threatening tone,  trying to  find Defendant Qiao. But Plaintiff had no information at all.

62.     Plaintiff's Chinese cell phone and messaging application were monitored because people who communicated with Plaintiff were visited and questioned by Chinese authority.

63.     Plaintiff's family in China were visited by Chinese authority.

64.     Plaintiff's practice was mostly related to China. Because of the loss of business and extreme stress caused by Defendants Qiao, Zhao and Y. Qiao, Plaintiff stopped law practice in 2013 and took a regular job. As a result, Plaintiff has lost millions in income.

65.     In early 2015, China named Defendant Qiao as the No. 3 of the 100 top fugitives for stealing RMB700 million, approximately $110 million, $50 million of which was transferred to the U.S unlawfully.

66.     In March, 2015, Defendant Zhao was arrested. Defendant Y. Qiao called and warned Plaintiff "not to be part of it" and not to say anything about the $3.5 million transfer.

67.     In May 2016, Plaintiff received the Notice of Lis Pendens for FHI's Condo in Flushing due to forfeiture allegations in Defendants Qian and Zhao's criminal case. Plaintiff immediately terminated the operations of FHI.

68.     On October 6, 2019, Plaintiff received an email from Defendant Jane Doe that Defendant Qiao wanted to talk. Plaintiff replied that Defendant Qiao has lied to and concealed lot of things from Plaintiff, causing a lot of trouble to Plaintiff. Plaintiff also stated that he was not able to provide any private help to Defendant Qiao.

69.     Defendants Qiao and Jane Doe kept sending emails to Plaintiff. Defendant Qiao was detained in Sweden and was fighting the U.S. government's extradition request. Defendants Qiao and Jane Doe were extremely worried about his criminal case in the U.S. In the following emails, text messages and calls, Defendants Qiao and Jane Done tried to coerce Plaintiff to collaborate with Defendant Qiao's lies for his criminal defense by threatening that Plaintiff would be in trouble if Defendant Qiao talked. Plaintiff refused, citing illegality and stated Plaintiff did nothing wrong.

70.     On March 6, 2020, Defendant Qiao told Plaintiff that Sweden decided to extradite him to the U.S.

71.     On March 13, 2020, Defendant Qiao asked Plaintiff to raise $200,000 for his criminal defense in the U.S. Plaintiff declined.

72.     Two years later, in January, 2022, Defendant Qiao called and told Plaintiff that his

13

criminal case was over and the Judge released him immediately.[3] Defendant Qiao was extremely happy and said that U.S. government does not know much. Defendant Qiao said the outcome of the criminal case was much better than he had expected. Now the nightmare was over and he wanted to put his life back together. Defendant Qiao continued that  Defendants Zhao, Y. Qiao and his Sweden wife helped him manage the affairs and he still maintained the banking relationship with the same banks, including Defendants HSBC PLC, UBS AG and US Bank and the money stashed away needs to be collected, investments need to be liquidated and debts need to be collected.

73.     Defendant Qiao said Plaintiff is a lifetime friend and is the only one he could trust. Defendant Qiao said there would be a lot things they can do together. Defendant Qiao wanted Plaintiff to go see him in Alhambra, CA to talk about business. Plaintiff asked Defendant Qiao to pay the unpaid fees from 10 years ago. In response, Defendant Qiao asked Plaintiff to go to California to talk about it.

74.     Defendant Qiao kept asking Plaintiff to meet him in California. But Plaintiff did not want to have anything to do with him.

75.     After Plaintiff made clear to Defendant Qiao that Plaintiff had no interest in his business, Defendants Qiao commenced a legal action against Plaintiff, Plaintiff's law firm and Plaintiff's wife in the Supreme Court of State of New York for $2.9 million on September 26, 2022 (the "State Action").[4]

**B.     Banks**

76.     Defendants HSBC USA, HSBC Cananda, HSBC HK, HSBC PLC, UBS USA,

---

[3] The court sentenced Qiao to time served, "which includes 24 months in custody in Sweden while awaiting extradition and 17 months in custody in the United States".
[4] Supreme Court of the State of New York, Queens County, Docket No. 719928/2022

UBS Singapore, UBS AG and U.S. Bank have knowingly participated in Defendants Qiao, Zhao and Y. Qiao's unlawful schemes since 2008 or early and such unlawful activities are ongoing as of today.

77.     For the purposes of laundering the stolen money, Defendants Qiao, Zhao and Y. Qiao have incorporated many shell companies and opened business bank accounts in various countries and regions, e.g., CJ Max Investment LLC in the U.S., Ping An, S.A. in Panama, Zhengyi Co. Limited in Hong Kong, Faith Advance Limited in Singapore, Xin Fa Co., Ltd. in British Virgin Islands. FHI would have been one of those shell companies for money laundering if Plaintiff had not kept the control from the beginning.

78.     Defendants Qiao and Zhao have been the HSBC Premier and private client, UBS high net worth private client and U.S. Bank VIP client since 2008 or early, which allow Defendants Qiao and Zhao to maintain a single client profile globally and open accounts at any branch easily.  Defendants Qiao and Zhao have maintained a large number of accounts with those bank in U.S., Canada, Hong Kong and Singapore. Defendants Qiao and Zhao have used those business and personal accounts to launder money through Defendants HSBC PLC, UBS AG and U.S. Bank's global network.

79.     The money stolen by Defendant Qiao involved large sum of cash. In order to move the money out of China between 2008 and 2011, Defendants Qiao and Zhao have taken various approaches. First, Defendant Qiao has taken frequent trips using his second Chinese passport for "Feng Li" and other false passports, oftentimes on weekends, to smuggle cash to Hong Kong and Singapore and on occasions, as far as New Zealand. Defendant Qiao has bribed and colluded with employees of HSBC and UBS in Hong Kong and Singapore so that those banks agreed to accept the large cash deposit without questioning and help Defendants Qiao and Zhao launder the money

through their global network. Defendants Qiao and Zhao were able to contact the designated employees at HSBC and UBS via phone and fax to wire money to any destinations.

80.     Second, Defendants Qiao and Zhao have hired individuals based in Hong Kong who came to collect the cash and smuggled to Hong Kong by train on regular basis.

81.     Third, Defendants Qiao and Zhao have used the underground money transfer service based in Wenzhou, Zhejiang Province, China. Defendants Qiao and Zhao have frequently delivered cash or transferred money to the underground money transfer service in China and the latter would deposit U.S. dollars into Defendants Qiao and Zhao's HSBC and UBS accounts in Hong Kong and Singapore.

82.     Since 2008, Defendants HSBC PLC, UBS AG and U.S. Bank knowingly made available to Defendants Qiao and Zhao their global network for Defendants Qiao, Zhao and Y. Qiao to move the stolen money to other countries, including U.S., Canada, Panama, Dominican Republic, St. Kitts, Switzerland, and Sweden.

83.     Since 2008, Defendants HSBC PLC and UBS AG have continuously transferred millions of dollars from overseas HSBC and UBS accounts to HSBC USA, HSBC Canada, UBS USA and U.S. Bank for Defendants Qiao and Zhao.

84.     Any of such large-sum overseas transfer would have raised a red flag but Defendants HSBC USA, HSBC Canada, UBS USA and U.S. Bank have knowingly participated in the unlawful transfer of stolen money.

### C.     Geng & Associates, P.C.

85.     Defendants Qiao, Zhao and Y. Qiao have devised and implemented a complicated criminal scheme since 2008 or early for the purpose of laundering and concealing the stolen money from authorities. A vast amount of stolen money has been invested in real estate and

various business and  has been spread to many business and persons in the form of loans and mortgage.

86.     The prosecution of Defendants Qiao and Zhao in the U.S. only uncovered a tip of iceberg of Defendants Qiao, Zhao and Y. Qiao's criminal enterprise. The money recovered through forfeiture of real property only represents a relatively small part of the criminal proceeds. The indictment of Defendant Qiao and Zhao sought that they forfeit to the United States all right, title, and interest in any and all property, real or personal. Defendants Qiao and Zhao's plea agreement required them "truthfully to disclose to law enforcement officials, at a date and time to be set by the USAO, the location of, defendant's ownership interest in, and all other information known to defendant about, all monies, properties, and/or assets of any kind, derived from or acquired as a result of, or used to facilitate the commission of, defendant's illegal activities, and to forfeit all right, title, and interest in and to such items, specifically including all right, title, and interest in and to all United States currency, property and assets." Defendants Qiao and Zhao lied to the prosecution and the Court by not making full disclosure of their crime and the hidden stolen assets in violation of the plea agreement and continue to benefit from the stolen money.

87.     Defendants Qiao, Zhao and Y. Qiao's unlawful and fraudulent activities in connection with the stolen money are ongoing today.

88.     Defendant Qiao remains an active fugitive on China's most-wanted list as of today.

89.     Defendant Qiao has tried to recruit Plaintiff in 2022 to engage in the criminal activities.

90.     After Defendant Qiao failed to recruit Plaintiff in January 2022, Defendant Qiao continued to seek lawyers' help in furtherance his criminal endeavors.

91.     Two law firms have represented Defendant Qiao for a short period of time in his

attempt to recover money from Plaintiff before Plaintiff made available to them the information about Defendant Qiao and his criminal prosecution.

92.    Defendants Geng P.C. is the third law firm that have represented Defendant Qiao. Defendants Geng P.C., Geng and Tsai are fully aware of Defendant Qiao's ongoing criminal activities.

93.    From June to July, 2023, Defendants Geng P.C., Geng, Tsai and Defendant Qiao have conspired over the phone multiple times about helping Defendant Qiao recover the stolen money that Defendant Qiao has transferred and lent to others.

94.    On or around July 16, 2023, Defendants Geng P.C., Geng, Tsai and Defendant Qiao entered into an agreement under which Defendants Geng P.C., Geng and Tsai would work with Defendant Qiao on a profit-sharing basis in connection with the stolen money, including but not limited to, the incorporation of shell companies, laundering the money through legitimate business and collection of the debt made with the stolen money. Defendants Geng P.C., Geng and Tsai started the work immediately.

95.    On July 19, 2023, Defendants Geng P.C. and Tsai substituted themselves for the prior attorney for Defendant Qiao in the State Action.

**<u>COUNT ONE</u>**

**FEDERAL CIVIL RICO – 18 U.S.C. § 1962(c)**
**(Against Defendants Qiao, Zhao, Y. Qiao,  HSBC USA, HSBC Canada, HSBC HK,**
**<u>HSBC PLC, UBS USA,  UBS Singapore, UBS AG, U.S. Bank, Geng P.C., Geng and Tsai</u>)**

96.    Plaintiff repeats and realleges all prior allegations as though fully set forth herein.

**A.    The Applicable Statutes**

97.     Under 18 U.S.C. § 1962(c) it is unlawful for "any person employed by or associated with an enterprise engaged in, or the activities of which affect, interstate or foreign commerce to conduct or participate directly or indirectly in the conduct of such enterprise's affairs for a pattern of racketeering activity or collection of unlawful debt."

98.     Under 18 U.S.C. § 1962(d), it is unlawful to conspire to violate any of the RICO substantive provisions, including section 1962(c).

99.     Under 18 U.S.C. § 1964(c), a private right of action exists for any person injured in his business or property by reason of violation of § 1962. Section 1964(c) provides for threefold the damages sustained as a result of recovery for the cost of suit including reasonable attorney fees.

### B.     The Enterprise

100.    Defendants Qiao, Zhao, Y. Qiao and the companies that they own and control, and Defendants HSBC USA, HSBC Canada, HSBC HK, HSBC PLC, UBS USA,  UBS Singapore, UBS AG, U.S. Bank, Geng P.C., Geng and Tsai constitute an association in fact Enterprise within the meaning of 18 U.S.C. § 1961(4).  Under 18 U.S.C. § 1961(3) a "person" is defined to include any individual or entity capable of holding a legal or beneficial interest in property. Each RICO Defendant was involved in the operation and management of the Enterprise. This Enterprise is separate and apart from the racketeering activity consisting of international transport of stolen money, money laundering, monetary transactions in property derived from unlawful activity, mail/wire fraud, and immigration fraud.

101.    This Enterprise functioned for the purpose of moving the stolen money,  concealing the stolen money from authorities, making investment and transaction using the stolen money and in the process defrauding other persons. Each RICO Defendant conducted the affairs of the Enterprise, or acted at the direction of others in the conduct of the affairs of the Enterprise.

C.       **The Racketeering Violation**

102.    From about year 2008, and continuing up to date,  each RICO Defendant, described herein, knowingly and unlawfully conducted or participated, directly or indirectly, in each Enterprise through a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(1) and § 1961(5), all in violation of 18 U.S.C. § 1962(c).

103.    The actions of each RICO Defendant described herein constitute racketeering activity within the meaning of 18 U.S.C. § 1961(1) because they constituted criminal offenses that were indictable as violations of international transport of stolen money 18 U.S.C. §§ 2314, 2315; money laundering 18 U.S.C. § 1956; monetary transactions in property derived from unlawful activity 18 U.S.C. § 1957; mail fraud 18 U.S.C. § 1341; wire fraud statute 18 U.S.C. § 1343; immigration fraud 18 U.S.C. § 1324c/INA 274C.

104.    The actions constitute a pattern of racketeering activity because each RICO Defendant as described herein, caused the commission of at least two acts of racketeering activity after the effective date of RICO and also within 10 years of each individual act and meet the "relationship" and "continuity" criteria described below.

D.       **Racketeering Activity**

105.    Over the course of 15 years, from before 2008 continuing nowadays, each RICO Defendant described herein knowingly and intentionally engaged in an ongoing pattern of racketeering activity under 18 U.S. Code § 1962(c).

106.    To accomplish their schemes, artifices, and conspiracies each Defendant described herein used  interstate mail and wire transmissions which furthered and sought to further the scheme to defraud Plaintiff, include, but are not limited to the following:

<u>Defendants Qiao, Zhao and Y. Qiao Commission of Racketeering Acts</u>

- See para. 6, Defendant Qiao was indicted with conspiracy to commit immigration fraud and international transport of stolen money, conspiracy to commit money laundering, and three counts of engaging in financial transactions in criminally derived property. Defendant Qiao was convicted of immigration fraud and interstate and international transport of stolen money. Defendant Zhao was indicted with immigration fraud, conspiracy to commit immigration fraud, international transport of stolen funds and conspiracy to commit money laundering. In January 2017, Defendant Zhao pleaded guilty to the charge of immigration fraud.

- See para. 28, on November 16, 2011, in order to induce Plaintiff to continue to provide services, Defendant Qiao used mailings and wirings, in interstate commerce, to make two wire transfers to Plaintiff in the amount of $45,762.23 and $46715.61 from his account 29XXXXXX1150 with Defendant HSBC Canada. On November 22, 2011, Defendant wired $44,676.45 from the same account to Plaintiff.

- See para. 30-31, Defendant Qiao conducted transactions with the stolen money in connection with the purchase of Sparrow Lakes Gold Club and Panama Project.

- See para. 34-36, Defendant Qiao wired $3.5 million from Defendant UBS Singapore account to Plaintiff and conducted business transaction with this stolen money.

- See para. 40, between December, 2011 and October, 2012, Defendants Qiao, Zhao and Y. Qiao have conducted multiple transactions with stolen money and made a large number of wire transfers out of their accounts with Defendants HSBC USA, UBS USA and U.S. Bank. Such activities continued until 2015 or later.

- See para. 41, between December, 2011 and October, 2012, Defendants Qiao and Zhao have caused the transfer of large sum of stolen money from Defendants HSBC HK and UBS Singapore to the U.S. and Canada.

- See para. 42, Defendants Qiao, Zhao and Y. Qiao have conducted transaction with stolen money for properties in Canada.

- See para. 72, Defendants Qiao, Zhao and Y. Qiao are continuing their unlawful activities in connection with the stolen money.

Defendants HSBC USA, HSBC Canada, HSBC HK, HSBC PLC, UBS USA,  UBS Singapore, UBS AG and U.S. Bank Commission of Racketeering Acts

- See para. 28, on November 16, 2011, in order to induce Plaintiff to continue to provide services, Defendant Qiao used mailings and wirings, in interstate commerce, to make two wire transfers to Plaintiff in the amount of $45,762.23 and $46715.61 from his account 29XXXXXX1150 with Defendant HSBC Canada. On November 22, 2011, Defendant Qiao wired $44,676.45 from the same account to Plaintiff.

- See para. 34-36, Defendant Qiao wired $3.5 million from Defendant UBS Singapore account to Plaintiff.

- See para. 40, between December, 2011 and October, 2012, Defendant Qiao, Zhao and Y. Qiao have made a large number of wire transfers out of their accounts with Defendants HSBC USA, UBS USA and U.S. Bank. Such activities continued until 2015 or later.

- See para. 41, between December, 2011 and October, 2012, Defendants Qiao and Zhao have caused the transfer of large sum of stolen money from Defendants HSBC HK and UBS Singapore to the U.S. and Canada.

- See para. 72, Defendants HSBC PLC, UBS AG and US Bank continued to provide banking service to Defendants Qiao, Zhao and Y. Qiao in connection with the stolen money in 2022.

- See para. 79, Defendant Qiao has bribed and colluded with employees of HSBC and UBS in Hong Kong and Singapore so that those banks agreed to accept the large sum cash deposit without questioning and help Defendants Qiao and Zhao launder the money through their global network. Defendants Qiao and Zhao were able to contact the designated employees at HSBC and UBS via phone and fax to wire money to any destinations.

- See para. 81, Defendants HSBC Hong Kong and UBS Singapore accepted deposits of stolen money on regular basis.

- See para. 82, since 2008, Defendants HSBC PLC, UBS AG and U.S. Bank knowingly made available to Defendants Qiao and Zhao their global network for Defendants Qiao, Zhao and Y. Qiao to move the stolen money to other countries, including U.S., Canada, Panama, Dominican Republic, St. Kitts, Switzerland, and Sweden.

- See para. 83-84, since 2008, Defendants HSBC PLC and UBS Singapore have continuously transferred millions of dollars from overseas HSBC and UBS accounts to HSBC USA, HSBC Canada, UBS USA and U.S. Bank for Defendants Qiao and Zhao.

Defendants Geng P.C., Geng and Tsai Commission of Racketeering Acts

- See para. 93, from June to July, 2023, Defendants Geng P.C., Geng, Tsai and Defendant Qiao have conspired over the phone for multiple times about helping Defendant Qiao recover the stolen money that Defendant Qiao transferred and lent to others, including the $3.5 million to Plaintiff.

- See para. 94, on or around July 16, 2023, Defendants Geng P.C., Geng, Tsai and Defendant Qiao entered into an agreement under which Defendants Geng P.C., Geng, Tsai would work with Defendant Qiao on a profit-sharing basis in connection with the stolen money, including but not limited to the incorporation of shell companies, laundering the money through legitimate business and collection of the debt made with stolen money. Defendants Geng P.C., Geng and Tsai started the work immediately.

**E.   Pattern of Racketeering**

107.   Defendants Qiao, Zhao, Y. Qiao,  HSBC USA, HSBC Canada, HSBC HK, HSBC PLC, UBS USA,  UBS Singapore, UBS AG, U.S. Bank, Geng P.C., Geng and Tsai participated in the above schemes through at least two acts of racketeering activities in violation of the provisions of the U.S. Code enumerated in 18 U.S.C. § 1961(1)(B).

108.   Each Defendant has engaged in a pattern of racketeering activity. The racketeering activity was made possible by Defendants' regular and repeated use of the facilities and services of the Enterprise. Each Defendant had the specific intent to engage in the substantive RICO violation alleged herein.

109.   Each Defendant has engaged in a "pattern of racketeering activity" within the meaning of 18 U.S.C. §§1961(1), 1961(5), because, as described above, they have engaged in the foregoing incidents of racketeering activity during the period 2008-present, including international transport of stolen money, money laundering, monetary transactions in property derived from unlawful activity, mail/wire fraud, and immigration fraud.

110.   The incidents of racketeering activity were related to each other in that they had the same or similar effects, results, participants, methods of commission, victims, and purpose.

111.    The racketeering acts were not isolated incidents, but were continuous conduct and such incidents of racketeering activity continued over a substantial period of time, i.e., from 2008 to present, a time period over 15 years.

    **F.**    **The Injury**

112.    Plaintiff has incurred injury to his person and property by reason of RICO Defendants' violations of 18 U.S. Code § 1962. The injury is direct and personal. As a result, Plaintiff is entitled to recover three-fold their damages suffered, plus attorney's fees and costs, pursuant to 18 U.S. Code § 1964(c).

### <u>COUNT TWO</u>

### FEDERAL CIVIL RICO CONSPIRACY – 18 U.S.C. § 1962(d)
### (<u>Against All Defendants</u>)

113.    Plaintiff repeats and realleges all prior allegations as though fully set forth herein.

    **A.**    **The Conspiracy**

114.    From  2018 to present, Defendants conspired to violate section 1962(c), i.e., each Defendant agreed that a conspirator would conduct or participate in the affairs of the Enterprise through a pattern of racketeering, consisting of acts indictable as violations of international transport of stolen money 18 U.S.C. §§ 2314, 2315; money laundering 18 U.S.C. § 1956; monetary transactions in property derived from unlawful activity 18 U.S.C. § 1957; mail fraud 18 U.S.C. § 1341; wire fraud statute 18 U.S.C. § 1343; immigration fraud 18 U.S.C. § 1324c/INA 274C as more fully described in Count One.  Plaintiff alleges that the conspiratorial objective of that mutual agreement was intended to cause injury to Plaintiff's person, business and property, and that such conspiratorial conduct violates RICO §1962(d).

115.    Each Defendant "adopted the goal of furthering or facilitating the criminal endeavor," which acts as described in Count One were completed and satisfied by at least one substantive Defendant.  As demonstrated in detail above, Defendants have engaged in systemic fraudulent practices designed to defraud Plaintiff of money and other property interests.

116.    The nature of the above-described acts, material misrepresentations, and omissions in furtherance of the conspiracy give rise to an inference that Defendants not only agreed to the objective of an 18 U.S.C. §1962(d) violation of RICO by conspiring to violate 18 U.S.C. § 1962(c), but they were aware that their ongoing fraudulent acts have been and are part of an overall pattern of racketeering activity.

**B.  Role of Each Conspiracy Defendant**

117.    Each of Defendants Qiao, Zhao and Y. Qiao committed a pattern of racketeering and agreed to adopt the goal of furthering or facilitating the criminal endeavor, which acts as described in Count One were completed and satisfied by at least one substantive Defendant.

118.    Each of Defendants HSBC USA, HSBC Canada, HSBC HK, HSBC PLC, UBS USA,  UBS Singapore, UBS AG and U.S. Bank committed a pattern of racketeering and agreed to adopt the goal of furthering or facilitating the criminal endeavor, which acts as described in Count One were completed and satisfied by at least one substantive Defendant.

119.    Each of Defendants Geng P.C., Geng and Tsai committed a pattern of racketeering and agreed to adopt the goal of furthering or facilitating the criminal endeavor, which acts as described in Count One were completed and satisfied by at least one substantive Defendant.

120.    Defendant Jane Doe agreed to adopt the goal of furthering or facilitating the criminal endeavor, which acts as described in Count One were completed and satisfied by at least one substantive Defendant.

### C.  The Injury

121.     As a direct and proximate result of Defendants' predicate acts in furtherance of violating 18 U.S.C § 1962(d) by conspiring to violate 18 U.S.C. § 1962(c), Plaintiff has been and is continuing to be injured in his person, business or property as set forth more fully above.


### **COUNT THREE**

### **(Claim of Fraud against Defendants Qiao, Zhao, Y. Qiao and Jane Doe)**

122.     Plaintiff repeats and realleges all prior allegations as though fully set forth herein.

123.     Defendants Qiao, Zhao, Y. Qiao and Jane Doe knowingly and intentionally misled Plaintiff by concealing the source of the money, their true identities, the fact Defendant Qiao was a fugitive wanted by Chinese authorities, the purposes of various investment, loans and mortgages, the purposes of obtaining St. Kitts citizenship and the criminal prosecution of Defendant Qiao.

124.     Defendants Qiao, Zhao, and Y. Qiao knowingly and intentionally misled Plaintiff about the nature of a great numbers of money transfers, which was the transfer of stolen money and the transaction with the stolen money.

125.     Defendant Qiao knowingly and intentionally misrepresented to Plaintiff about Defendant Qiao's intention not to pay the agreed and promised legal fees and advisory fees.

126.     Defendants Qiao, Zhao, Y. Qiao and Jane Doe deceived Plaintiff for their own benefits at Plaintiff's expense.

127.     Defendants Qiao, Zhao, Y. Qiao and Jane Doe knowingly and intentionally engaged Plaintiff under false pretense in furtherance of their criminal scheme, causing damage to Plaintiff's person, business and property.

128.    The false information and omission provided by Defendants Qiao, Zhao, Y. Qiao and Jane Doe were material and important.

129.    Plaintiff has relied on Defendants Qiao, Zhao, Y. Qiao and Jane Doe's misrepresentation to work with them and therefore exposed himself to the risk of criminal prosecution and resulted in grave financial loss and personal injury.

130.    Plaintiff has been damaged in his person and property by reason of Defendants Qiao, Zhao, Y. Qiao and Jane Doe's unlawful and fraudulent acts and is entitled to recover compensatory damages suffered and punitive damages sufficient to deter Defendants from committing such lawful and fraudulent conducts in the future, plus interest, attorney's fees and costs.

## **COUNT FOUR**

### **(Claim of Conspiracy against Defendants Qiao, Zhao, Y. Qiao and Jane Doe)**

131.    Plaintiff repeats and realleges all prior allegations as though fully set forth herein.

132.    Defendants Qiao, Zhao, Y. Qiao and Jane Doe agreed to knowingly and intentionally conceal their unlawful schemes from Plaintiff for their own benefits and at the expenses of Plaintiff.

133.    Defendants Qiao, Zhao, Y. Qiao and Jane Doe knowingly and intentionally misled Plaintiff by concealing material facts, including the source of the money, their true identities, the fact Defendant Qiao was a fugitive wanted by Chinese authorities, the purposes of various investment, loans and mortgages, the purposes of obtaining St. Kitts citizenship and the criminal prosecution of Defendant Qiao in furtherance of the agreed criminal scheme.

134.    Each of Defendants Qiao, Zhao, Y. Qiao and Jane Doe knowingly and intentionally participated in furtherance of their criminal scheme.

135.    Plaintiff has been damaged in his person and property by reason of Defendants Qiao, Zhao, Y. Qiao and Jane Doe's unlawful conspiracy and is entitled to recover compensatory damages suffered and punitive damages sufficient to deter Defendants from committing such lawful and fraudulent conducts in the future, plus interest, attorney's fees and costs.

## COUNT FIVE

**(Claim of Aiding and Abetting Fraud against Defendants HSBC USA, HSBC Canada, HSBC HK, HSBC PLC, UBS USA,  UBS Singapore, UBS AG, U.S. Bank, Geng P.C., Geng and Tsai)**

136.    Plaintiff repeats and realleges all prior allegations as though fully set forth herein.

137.    Defendants HSBC USA, HSBC Canada, HSBC HK, HSBC PLC, UBS USA,  UBS Singapore, UBS AG and U.S. Bank have knowledge of the fraud and have been knowingly providing substantial assistance to advance the fraud's commission by providing banking and money transfer services.

138.    Defendants Geng P.C., Geng and Tsai have knowledge of the fraud and have been knowingly providing substantial assistance to advance the fraud's commission by providing legal and other services.

139.    Plaintiff has been damaged in his person and property by reason of Defendants HSBC USA, HSBC Canada, HSBC HK, HSBC PLC, UBS USA,  UBS Singapore, UBS AG, U.S. Bank, Geng P.C., Geng and Tsai's unlawful aiding and abetting fraud and is entitled to recover compensatory damages suffered and punitive damages sufficient to deter Defendants from committing such lawful and fraudulent conducts in the future, plus interest, attorney's fees and costs.

## COUNT SIX

### (Claim of Breach of Contract Against Defendant Qiao)

140.    Plaintiff repeats and realleges all prior allegations as though fully set forth herein.

141.    Plaintiff and Defendant Qiao made a contract.

142.    Plaintiff has performed the services under the contract.

143.    Defendant Qiao has accepted the services provided by Plaintiff.

144.    Defendant Qiao has breached such contract by failure to pay the agreed fees.

145.    As a result of these breaches, Plaintiff has been damaged as determined at trial.


## COUNT SEVEN

### (Claim of Promissory Estoppel against Defendant Qiao)

146.    Plaintiff repeats and realleges all prior allegations as though fully set forth herein.

147.    Defendant Qiao has made a clear and unambiguous promise to induce Plaintiff to provide services and to continue to provide service.

148.    Plaintiff has relied on Defendant Qiao's promise to provide the services and to continue to provide services.

149.    As a result of Defendant Qiao's failure to honor the promise, Plaintiff has been damaged as determined at trial.


## COUNT EIGHT

### (Claim of Unjust Enrichment against Defendants Qiao, Zhao, Y. Qiao and Jane Doe)

150.    Plaintiff repeats and realleges all prior allegations as though fully set forth herein.

151.    Defendants Qiao, Zhao, Y. Qiao and Jane Doe have received substantial benefits at Plaintiff's expenses.

152.    Defendants Qiao, Zhao, Y. Qiao and Jane Doe have failed to compensate for Plaintiff's services.

153.    Plaintiff has been damaged by Defendants Qiao, Zhao, Y. Qiao and Jane Doe's failure to compensate for Plaintiff's services.

154.    The restitution is required by equity and morality.


## COUNT NINE

### (Claim of Quantum Meruit Against Defendants Qiao, Zhao and Y. Qiao)

155.    Plaintiff repeats and reallege all prior allegations as though fully set forth herein.

156.    Plaintiff has performed services of value to Defendants Qiao, Zhao and Y. Qiao and had the expectation of reasonable compensation.

157.    Defendants Qiao, Zhao and Y. Qiao have accepted Plaintiff's services.

158.    As a result of Defendants Qiao, Zhao and Y. Qiao's failure to compensate Plaintiff for his services, Plaintiff has been damaged as determined at trial.


## COUNT TEN

### (Claim of Intentional Infliction of Emotional Distress against Defendants Qiao, Zhao and Y. Qiao)

159.    Plaintiff repeats and reallege all prior allegations as though fully set forth herein.

160.   Defendants Qiao, Zhao and Y. Qiao's conducts to lure Plaintiff into personal and business relationship by concealing the Defendants Qiao and Zhao's criminal activities are extreme and outrageous.

161.   Defendants Qiao, Zhao and Y. Qiao intended to cause or disregarded a substantial probability of causing severe emotional distress to Plaintiff.

162.   Defendants Qiao, Zhao and Y. Qiao's conducts did cause severe emotional distress to Plaintiff to the extent that Plaintiff was not able to continue the legal practice and normal life.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff demands judgment for the following relief:

(a)   Awarding Plaintiff three-fold their damages suffered, plus attorney's fees and costs, pursuant to 18 U.S. Code § 1964(c).

(b)   Awarding all other remedies provided for pursuant to 18 U.S. Code § 1964(a), including, but not limited to:

1)   Ordering Defendants to divest themselves of any interest, direct or indirect, in any enterprise;

2)   Imposing reasonable restrictions on the future activities or investments of Defendants, including but not limited to, prohibiting any of them from engaging in the same type of endeavor found to be in violation of 18 U.S. Code § 1962;

3)   Ordering the restitution of any moneys or property unlawfully obtained or retained by Defendants found to be in violation of 18 U.S. Code § 1962;

4)  Ordering Defendants to forfeit their interests they have acquired or maintained in violation of 18 U.S. Code § 1962, and any interest in, security of, claim against, or property or contractual right of any kind affording a source of influence over any enterprises they have established, operated, controlled, conducted or participated in.

(c)   Awarding Plaintiff compensatory damages against Defendants;

(d)   Awarding Plaintiff punitive damages against Defendants;

(e)   Awarding Plaintiff interest, attorney's fees and costs in this action; and

(f)   For such other and further relief as the Court deems just and proper.

## JURY DEMAND

Defendants hereby demand trial by jury on all issues triable by jury.

Dated: October 6, 2023                    Respectfully submitted,

By: _____*/s/ John Y. Tang*_____
                    John Y. Tang

John Y. Tang (N.Y. SBN: 4728580)
**Tang PC**
1702 Flushing Ave
Ridgewood, NY 11385
Telephone: (212) 363-0188
Facsimile: (212) 981-4869
 john.tang@gettang.com

Wenjie Cai (N.Y. SBN: 5867569)
**Tang PC**
1702 Flushing Ave
Ridgewood, NY 11385
Telephone: (212) 363-0188

33

Facsimile: (212) 981-4869
ericat@gettang.com

*Counsel for Plaintiff*