UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOHN Y. TANG,<br><br>       Plaintiff,<br><br>   v.<br><br>JIANJUN QIAO, et al.,<br><br>       Defendants. | 23 Civ. 8760 (DEH)<br><br>**OPINION<br>AND ORDER** |

DALE E. HO, United States District Judge:

  In this action, Plaintiff John Y. Tang sues fifteen Defendants regarding events that center on his relationship with Defendant Jianjun Qiao. As alleged in the Second Amended Complaint (the "SAC")[1] and detailed below, Tang acted as Qiao's lawyer and business partner from November 2011 until July 2012.[2] Throughout and after this relationship, Qiao allegedly engaged in money laundering, committed fraud of various kinds, and failed to pay Tang legal fees. Plaintiff sues Qiao, Qiao's ex-wife Shilan Zhao, and Qiao's son Yuxin Qiao ("Y. Qiao") (together, the "Qiao Family Defendants"). He also sues the financial services entities HSBC Bank USA, N.A. ("HSBC USA"), HSBC Bank Canada ("HSBC Canada"), HSBC Hong Kong ("HSBC Hong Kong"), HSBC Holdings PLC ("HSBC UK"), UBS Bank USA ("UBS USA"), UBS AG Singapore Branch ("UBS Singapore"), UBS Group AG ("UBS Switzerland"), and U.S.

---

[1] The parties had briefed motions to dismiss the First Amended Complaint (the "FAC") when Plaintiff sought leave to file the SAC, the operative pleading. *See* ECF No. 112. Because the SAC only made changes necessary to effectuate service in Hong Kong, rather than changing the substantive basis of Plaintiff's claims, an order issued on May 3, 2024, construed the pending motions to dismiss the FAC as motions to dismiss the SAC. *See* ECF No. 113.

[2] Although the SAC is signed by Plaintiff and Plaintiff is listed on ECF as representing himself, the special solicitude normally afforded to *pro se* litigants does not apply, because of Plaintiff's status as an attorney. *See Bank v. Sirlin*, 830 F. App'x 690, 690 (2d Cir. 2020) ("Bank is an attorney representing himself and thus he is not entitled to special solicitude.").

Bank N.A. ("U.S. Bank") (collectively, the "Bank Defendants"), alleging that these entities either participated in or turned a blind eye to Qiao's activity. Plaintiff further sues Defendants Geng & Associates P.C. ("Geng P.C."), Ting Geng, and Sylvia P. Tsai (collectively, the "Geng Defendants"), who acted as Qiao's counsel after Tang's relationship with Qiao broke down. Finally, Plaintiff sues a Jane Doe Defendant, Qiao's wife in Sweden. The Geng Defendants have counterclaimed, asserting in substance that Plaintiff's lawsuit is frivolous and brought without any basis in law. *See* ECF No. 46.

The Geng Defendants, Defendant U.S. Bank, and, together, Defendants HSBC USA and UBS USA (collectively, the "Moving Defendants") move to dismiss. *See* ECF No. 83 (Geng Defendants), No. 87 (HSBC USA and UBS USA), No. 94 (U.S. Bank N.A.). Plaintiff moves to dismiss the Geng Defendants' counterclaim. *See* ECF No. 98. For the reasons given below, Moving Defendants' motions are **GRANTED** and Plaintiff's motion is **GRANTED.**

## BACKGROUND

The following facts are taken from the SAC and are assumed to be true solely for purposes of adjudicating Defendant's motion. *See Buon v. Spindler*, 65 F.4th 64, 69 n.1 (2d Cir. 2023).[3]

**A.  Plaintiff's Dealings with Qiao**

Qiao called Plaintiff on November 9, 2011, introducing himself as Steven Li, a businessman from China. SAC ¶ 21, ECF No. 116. In fact, he was a former Chinese government official on the run, wanted by the Chinese government for stealing $110 million in state funds. *Id.* On November 11, Plaintiff met with Qiao, Zhao, and Y. Qiao in Los Angeles.

---

[3] In all quotations from cases, internal quotation marks, brackets, ellipses, citations, footnotes, and other modifications are omitted. All references to Rules are to the Federal Rules of Civil Procedure.

*Id.* ¶ 22. They discussed potential investment opportunities in the United States, Europe, and Caribbean countries for funds that Qiao claimed came from his earnings on the Chinese and Hong Kong stock markets; in fact, they were the proceeds of Qiao's embezzlement from a Chinese government entity. *Id.* ¶ 23. Qiao also discussed getting citizenship in Caribbean countries; although he and his family had green cards in the U.S., he stated he was interested in alternate citizenship for tax purposes. *Id.* ¶ 25. In fact, he sought this citizenship to avoid extradition to China. *Id.* The meeting went well, and Qiao asked Plaintiff to be his personal lawyer and business partner. *Id.* ¶ 26. Although Plaintiff noted ethical concerns with this arrangement, Qiao stated that he did not care. *Id.* Plaintiff accepted the offer, and Qiao agreed to pay Plaintiff his legal fees, 7% of the investment amount as fees for investment advising, and a bonus of $200,000 upon obtaining citizenship in Caribbean countries. *Id.* ¶ 26.

On November 16, Qiao wired Plaintiff $92,477.84 from his account at HSBC Canada as an initial payment of fees. *Id.* ¶ 28. On November 22, Qiao wired an additional $44,676.45 from the same account. *Id.* These amounts are the only fees Plaintiff has received to date for his services. *Id.*

Shortly after they met in Los Angeles, Plaintiff and Qiao traveled to Panama several times to work on a real estate development project. *Id.* ¶ 32. As part of the project, they incorporated a Panamanian investment company Ping An S.A. and opened a business account with Global Bank. *Id.* Plaintiff was the President, sole corporate officer, and sole signatory on the account. *Id.* On November 20, Qiao asked Plaintiff if Qiao could wire some money related to the Panama project into Plaintiff's attorney trust account, as Global Bank had returned the funds when Qiao had attempted to do so. *Id.* ¶ 33. On November 22, Faith Advance Limited, a Singapore company, wired $3.5 million from its UBS Singapore account to Plaintiff's attorney trust account. *Id.* ¶ 34. On November 25, Plaintiff incorporated Fortuna Holding Inc. ("FHI")

3

and on December 13, transferred the funds from his attorney trust account into FHI's bank account. *Id.* ¶ 35. Qiao then told Plaintiff he had been able to pay for the Panama project out of other funds, and the $3.5 million should remain in FHI's account. *Id.* ¶ 36. Qiao and Plaintiff then entered into an agreement under which Plaintiff would manage the $3.5 million and receive 20% of any profit as compensation. *Id.* Zhao was named a director of FHI and Y. Qiao "would take part in FHI's operations." *Id.* However, the Qiao Defendants were never actually involved in operating FHI, which remained in Plaintiff's sole control. *Id.* ¶ 37.

Plaintiff worked with Qiao on other investment projects, including commercial and residential real estate projects in New York, New Jersey, California, Florida, South Carolina, and the Dominican Republic. *Id.* ¶ 38. Plaintiff also assisted Qiao in seeking citizenship in various Caribbean countries and Panama, and, in October 2012, Qiao obtained a passport from St. Kitts and Nevis. *Id.* ¶ 39.

Throughout Plaintiff's relationship with Qiao, Qiao and Zhao "appeared to eagerly move money out of their possession," with Plaintiff providing legal assistance in doing so. *Id.* ¶ 40. Qiao and Zhao lent large sums to persons unknown to Plaintiff, making wire transfers out of their accounts with HSBC USA, UBS USA, and U.S. Bank between December 2011 and some point in 2015 or after. *Id.* Qiao and Zhao also directed Plaintiff to contact HSBC Hong Kong and UBS Singapore to facilitate outbound wire transfers to the U.S. and Canada. *Id.* ¶ 41. Qiao also frequently requested money from Plaintiff to support his lifestyle and Plaintiff would bring Qiao cash every time they met. *Id.* ¶ 45. In total, Plaintiff gave Qiao approximately $165,000 in cash from FHI funds and additionally paid around $700,000 in FHI funds to support Qiao's living expenses. *Id.* ¶¶ 45-46. Plaintiff also wired over $1.655 million in FHI funds to entities in China, Panama, and the Dominican Republic, and used $710,000 of FHI funds to purchase an apartment for Qiao in Flushing, New York. *Id.* ¶¶ 47-48.

Shortly after the purchase of the Flushing condo, Plaintiff raised the issue of fees with Qiao, as he had not received any payment in months. *Id.* ¶ 49. Qiao did not want Plaintiff to use FHI funds to pay his legal fees and instead offered equity in future investment projects. *Id.* ¶¶ 49-50.

On May 25, 2012, Plaintiff, his wife, and Qiao traveled to the Dominican Republic. *Id.* ¶ 51. There, Qiao announced he would stay in the Dominican Republic and requested that Plaintiff wire $1.2 million to purchase a house. *Id.* ¶¶ 51-52. Plaintiff informed Qiao there was no more money and that he would not provide services if his fees were not paid. *Id.* ¶ 52. In July 2012, Plaintiff learned that China sought the arrest of Qiao and traveled to the Dominican Republic. *Id.* ¶ 54. Plaintiff informed Qiao that their attorney-client and business relationship was over and that Plaintiff would dissolve FHI, retaining any money left over for unpaid fees. *Id.*

After this, Zhao and Y. Qiao visited Plaintiff, asking for the $3.5 million wired to FHI. *Id.* ¶ 58. Plaintiff refused. *Id.* Plaintiff eventually stopped practicing law, due to the loss of business caused by his association with Qiao and stress caused by the situation. *Id.* ¶ 64. In March 2015, Zhao was arrested and Y. Qiao called Plaintiff to warn him not to say anything about the $3.5 million. *Id.* ¶ 66. In May 2016, Plaintiff received a notice of *lis pendens* regarding the Flushing apartment, due to Qiao and Zhao's criminal cases. *Id.* ¶ 67. Plaintiff terminated the operations of FHI. *Id.*

On October 6, 2019, Qiao reached out to Plaintiff through Jane Doe, his wife in Sweden. *Id.* ¶ 68. Plaintiff refused to help Qiao and, in response, Qiao and Jane Doe continued to email Plaintiff, trying to coerce him into collaborating with Qiao's planned false testimony in his criminal case. *Id.* ¶ 69. On March 13, 2020, Qiao asked Plaintiff to help him raise funds for his criminal defense, which Plaintiff declined. *Id.* ¶ 71.

5

In January 2022, Qiao was sentenced to time served in his criminal case, and ordered released. *Id.* ¶ 72. Qiao called Plaintiff, stating that he still maintained a relationship with his banks, including HSBC UK, UBS Switzerland, and U.S. Bank, and that "the money stashed away needs to be collected, investments need to be liquidated and debts need to be collected." *Id.* Plaintiff asked about his unpaid legal fees and Qiao said they should talk in California. *Id.* ¶ 73. Qiao asked Plaintiff repeatedly to meet with him about future opportunities, but Plaintiff declined. *Id.* ¶¶ 73-74.

B.   **Qiao and Zhao's Dealings with the Bank Defendants**

HSBC UK is the parent entity of HSBC USA, HSBC Canada, and HSBC Hong Kong. *Id.* ¶ 12. UBS Switzerland is the parent entity of UBS USA and UBS Singapore. *Id.* ¶ 15. Qiao and Zhao have been preferred clients of HSBC, UBS, and U.S. Bank since 2008 or earlier, which allowed them to open accounts easily. *Id.* ¶ 78. These relationships allowed them to maintain many accounts, which they used to launder money. *Id.*

The money Qiao stole from the Chinese government included a large sum of cash. *Id.* ¶ 79. In order to move this money out of China, Qiao took frequent trips from 2008 to 2011, using a second passport or false passports, to Hong Kong, Singapore, and New Zealand. *Id.* Qiao bribed and colluded with HSBC and UBS employees in Hong Kong and Singapore so they would accept large cash deposits without question. *Id.* Qiao and Zhao also hired individuals in Hong Kong to smuggle the cash into Hong Kong by train on a regular basis. *Id.* ¶ 80. Qiao and Zhao also used an underground money transfer service in Wenzhou, China to convert currency into U.S. dollars and deposit those dollars into Qiao and Zhao's HSBC and UBS accounts in Hong Kong and Singapore. *Id.* ¶ 81.

HSBC, UBS, and U.S. Bank "knowingly made available to . . . Qiao and Zhao their global network" to move stolen money to various countries. *Id.* ¶ 82. HSBC UK and UBS

6

Switzerland continuously transferred millions of dollars from overseas HSBC and UBS accounts to accounts with HSBC USA, HSBC Canada, UBS USA, and U.S. Bank, on behalf of Qiao and Zhao. *Id.* ¶ 83. The scale of these transfers "would have raised a red flag" but these American and Canadian entities "have knowingly participated in the unlawful transfer[s]." *Id.* ¶ 84.

**C.      The Geng Defendants**

After Qiao failed to convince Plaintiff to return working for him in January 2022, Qiao retained counsel to try to recover assets from Plaintiff. *Id.* ¶¶ 90-91. After two law firms represented Qiao for a short period of time, Qiao retained Geng P.C. *Id.* ¶ 92. Defendant Geng is the principal at Geng P.C. and Defendant Tsai is a partner at Geng P.C. *Id.* ¶¶ 18-19. In June and July 2023, the Geng Defendants and Qiao conspired to help Qiao recover the stolen money from people to whom Qiao had transferred or lent it. *Id.* ¶ 93. On July 16, 2023, the Geng Defendants entered into a profit-sharing agreement with Qiao to recover the stolen funds. *Id.* ¶ 94. To do so, they agreed to incorporate shell companies, launder the recovered money through legitimate businesses, and collect debts incurred with the stolen money. *Id.*

**D.      Procedural History**

On September 26, 2022, Qiao sued Tang, Tang's law firm, and Tang's wife in New York state court. *Id.* ¶ 75; *see also* Summons and Complaint, *Qiao v. Tang*, No. 719928/2022, NYSCEF No. 1 (N.Y. Sup. Ct. Sept. 26, 2022). Qiao's lawsuit concerns the events described above—specifically, the relationship between Tang and Qiao, and the $3.5 million placed in FHI's account—and asserts eight state tort claims, including breach of contract, breach of fiduciary duty, fraud, conversion, and attorney malpractice. *See* Order, *Qiao v. Tang*, No. 719928/2022, NYSCEF No. 42 (N.Y. Sup. Ct. Nov. 22, 2022) (granting motion to dismiss with respect to unjust enrichment claim and denying motion to dismiss with respect to claims listed above).

On October 5, 2023, Tang filed this lawsuit. *See* ECF No. 1. In the operative Complaint, the SAC, Tang asserts ten claims. As is relevant for these motions, he asserts two claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, *et seq*. *See* SAC ¶¶ 96-121. Plaintiff alleges a substantive RICO claim and a RICO conspiracy claim, both against all Defendants. *See id*. He also asserts a claim for aiding and abetting fraud against the Bank Defendants and the Geng Defendants. *See id*. ¶¶ 136-139. The Bank Defendants and Geng Defendants move to dismiss all claims against them. *See* ECF Nos. 83, 87, 94.[4]

On July 25, 2024, Tang filed cross claims in the pending state court action against Zhao, Y. Qiao, the Bank Defendants, the Geng Defendants, and a Jane Doe Defendant. *See* Third Party Summons and Complaint, *Qiao v. Tang*, No. 719928/2022, NYSCEF No. 52 (N.Y. Sup. Ct. July 30, 2024). These cross claims assert claims under RICO and state law and pull language verbatim from the SAC in this matter.

## LEGAL STANDARDS

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Sacerdote v. N.Y. Univ.*, 9 F.4th 95, 106 (2d Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "In assessing the complaint, [a court] must construe it liberally, accepting all factual allegations therein as true and drawing all reasonable inferences in the plaintiffs' favor." *Id*. at 106-07. However, the court must disregard any "conclusory allegations, such as 'formulaic recitation[s]

---

[4] Plaintiff also asserts claims for breach of contract and promissory estoppel (against Qiao), claims for quantum meruit and intentional infliction of emotional distress (against the Qiao Family Defendants), and claims for fraud, conspiracy, and unjust enrichment (against the Qiao Family Defendants and Jane Doe). *See generally* SAC. The Qiao Family Defendants have filed answers to these claims. *See* ECF Nos. 96 (Qiao), 104-105 (Y. Qiao), 103 & 106 (Zhao). The Jane Doe Defendant has not been served and has not appeared.

of the elements of a cause of action.'" *Id.* at 107 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

## DISCUSSION

Moving Defendants' motions to dismiss are **GRANTED** and Plaintiff's motion to dismiss the Geng Defendants' counterclaim is **GRANTED.**

A.  **RICO Claims (Against All Defendants)**

Plaintiff alleges two claims under RICO, a substantive RICO claim and a RICO conspiracy claim. These claims are dismissed as against all Defendants due to the deficiencies outlined below.

1.  **Substantive RICO Claim (Count 1)**

First, the SAC fails to state a substantive RICO claim. Count 1 alleges a substantive violation of § 1962(c), which bars "any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c). To state a civil RICO claim, Plaintiff must adequately plead (1) "that the individual defendants committed a substantive RICO violation" and (2) "that the violation proximately caused an injury to [his] business or property." *NRP Holdings LLC v. City of Buffalo*, 916 F.3d 177, 196 (2d Cir. 2019); *see also* 18 U.S.C. § 1964(c) (providing a private right of action for persons injured "by reason of" a substantive RICO violation). To plead a substantive RICO violation under the first prong, Plaintiff must allege that Defendants engaged in "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 120 (2d Cir. 2013). "[T]o survive a Rule 12(b)(6) motion to dismiss, a plaintiff must offer more than labels and conclusions in pleading the non-fraud elements of a RICO claim." *D. Penguin Bros. Ltd. v.*

9

*City Nat. Bank*, 587 F. App'x 663, 666 (2d Cir. 2014). The SAC fails to do so with respect to either an enterprise or a pattern of racketeering activity sufficient for a substantive RICO violation.

        **a.**    **Enterprise**

The RICO statute defines "enterprise" as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). Here, the SAC alleges that the named Defendants and all companies owned and controlled by the Qiao Family Defendants form an association in fact. SAC ¶ 100. "[A]n association-in-fact enterprise is a group of persons associated together for a common purpose of engaging in a course of conduct." *Boyle v. United States*, 556 U.S. 938, 946 (2009). It must have at least three structural features: 1) "a purpose," 2) "relationships among those associated with the enterprise," and 3) "longevity sufficient to permit these associates to pursue the enterprise's purpose." *Id.*

The SAC does not adequately allege a RICO enterprise. First, it does not allege a common purpose distinct from the alleged pattern of racketeering activity. The SAC alleges that the purpose of the alleged association in fact was to move the money Qiao stole out of China without detection from law enforcement and invest it. *Id.* ¶ 101. However, the SAC includes neither allegations about how any Defendants outside the Qiao Family Defendants benefitted from the alleged enterprise nor any "specific factual allegations about the intent of any RICO defendant" other than Qiao. *D. Penguin Bros. Ltd.*, 587 F. App'x at 668 (affirming dismissal of a civil RICO claim when the complaint failed to include allegations of "any shared purpose" or defendants' intent "to advance the . . . agenda of [the] purported enterprise"). Further, the SAC does not allege facts clarifying the relationships among those in the enterprise. For example, it is unclear whether or if the Geng Defendants are alleged to have any connection to the actions of

the Bank Defendants. Generously interpreted, the SAC alleges that Qiao directed the affairs of the association-in-fact for his personal benefit. However, "[t]he enterprise must be separate from the pattern of racketeering activity, and distinct from the person conducting the affairs of the enterprise." *First Cap. Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 173 (2d Cir. 2004); *accord Black v. Ganieva*, 619 F. Supp. 3d 309, 330 (S.D.N.Y. 2022), *aff'd*, No. 22 Civ. 1524, 2023 WL 2317173 (2d Cir. Mar. 2, 2023). The SAC fails on both counts.

In sum, the SAC does not allege any facts that, even if construed in favor of Plaintiff as the non-moving party, establish "a continuing unit that functions with a common purpose." *United States v. Arrington*, 941 F.3d 24, 37 (2d Cir. 2019); *cf. First Cap. Asset Mgmt., Inc.*, 385 F.3d at 174 ("The Amended Complaint fails . . . to detail any course of fraudulent or illegal conduct separate and distinct from the alleged predicate racketeering acts themselves . . . [and] to provide . . . any solid information regarding the hierarchy, organization, and activities of this alleged association-in-fact enterprise."). Because the SAC fails to allege a common purpose or relationships among the participants of the alleged association, it does not adequately plead an enterprise for purposes of RICO.

### b.    Pattern of Racketeering Activity

Nor does the SAC adequately plead a pattern of racketeering activity. Plaintiff "must demonstrate, as to each defendant, that while employed by or associated with an enterprise . . . through the commission of at least two predicate acts constituting a pattern of racketeering, the defendant directly or indirectly conducted or participated in the conduct of the affairs of such enterprise." *AFSCME Dist. Council 37 Health & Sec. Plan v. Bristol-Myers Squibb Co.*, 948 F. Supp. 2d 338, 344 (S.D.N.Y. 2013). "To show such a pattern, the government must prove at least two predicate racketeering acts that amount to or pose a threat of continued criminal

11

activity, and are . . . related both to each other ('horizontal' relatedness), and to the enterprise ('vertical' relatedness)." *United States v. Laurent*, 33 F.4th 63, 75 (2d Cir. 2022).

      The SAC does not adequately plead a pattern of racketeering activity with respect to each Defendant. With respect to the Bank Defendants, the SAC alleges that the Qiao Family Defendants used banking services at the Bank Defendants to transfer stolen money, but it is devoid of any non-conclusory allegations about the Bank Defendants' knowledge of or participation in the Qiao Family Defendants' activity. *See* SAC 22-24 (collecting allegations with respect to the Bank Defendants). The SAC offers only conclusory statements that employees of HSBC Hong Kong and UBS Singapore were bribed into accepting large cash deposits without questions, *id.* ¶ 79, and that HSBC UK, UBS Switzerland, and U.S. Bank "knowingly made available . . . their global network . . . to move the stolen money," *id.* ¶ 82.

      With respect to the Geng Defendants, the SAC alleges that they "conspired over the phone multiple times about helping Defendant Qiao recover the stolen money," *id.* ¶ 93, and that Qiao and the Geng Defendants entered into an agreement to "launder[] the money through legitimate business and collect[] . . . the debt made with the stolen money," and that the Geng Defendants "started the work immediately," *id.* ¶ 94. These general, non-specific allegations are inadequate. *See 4 K&D Corp. v. Concierge Auctions, LLC*, 2 F. Supp. 3d 525, 540 (S.D.N.Y. 2014) (dismissing a civil RICO claim for lack of allegations of racketeering activity where "[t]he plaintiffs have failed to identify any specific act of CA Partners committing wire fraud, let alone establishing the commission of two or more predicate acts").

      Even with respect to the Qiao Family Defendants, the SAC's allegations fail. While the SAC goes into a greater level of specificity with respect to Qiao and Zhao, *see, e.g.*, SAC ¶¶ 6-7 (alleging that Qiao was convicted of immigration fraud and interstate and international transport of stolen money and that Zhao pleaded guilty to immigration fraud), it does not connect their

12

activity to anything beyond their personal interest. "[D]efendants who allegedly constitute an illegal enterprise and engage in predicate offenses in furtherance of the defendants' own affairs or purposes, as opposed to the affairs or purposes of their common 'enterprise,' would fail to satisfy the requirements of RICO." *Gross v. Waywell*, 628 F. Supp. 2d 475, 498 (S.D.N.Y. 2009). In sum, the SAC's allegations of a pattern of racketeering activity fall woefully short.

* * *

The SAC does not plead an enterprise or a pattern of racketeering activity, meaning it fails to sufficiently allege any underlying RICO violation. Therefore, it is unnecessary to determine whether the alleged violation "proximately caused an injury to [Plaintiff's] business or property" as is needed to plead a substantive civil RICO claim. *NRP Holdings LLC*, 916 F.3d at 196. Similarly, RICO's four-year statute of limitations "begins to run when the plaintiff discovers or should have discovered the RICO injury." *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 361 (2d Cir. 2013). Because Plaintiff does not adequately plead the underlying RICO violation (and therefore any substantive civil RICO claim), it is unnecessary to determine whether any affirmative defenses are applicable from the face of the SAC. *See Spinelli v. Nat'l Football League*, 903 F.3d 185, 199 (2d Cir. 2018) (noting that an affirmative defense is "a permissible basis for dismissal only where the facts necessary to establish the defense are evident on the face of the complaint").[5] Accordingly, Plaintiff's substantive RICO claim fails to state a claim against any Defendant and is dismissed.[6]

---

[5] If Plaintiff cures the deficiencies described with any further amendments, the Moving Defendants may renew their arguments with respect to these elements and/or defenses.

[6] Because the RICO claims fail as a matter of law against all Defendants, it is unnecessary to wait for the absent Defendants to appear before dismissing claims against them. *See United States ex rel. Donohue v. Buffalo Pub. Sch. Dist.*, No. 23 Civ. 374, 2024 WL 1827268, at *1 (2d Cir. Apr. 26, 2024) ("[T]he district court properly reached common merits issues rather than first addressing personal jurisdiction and the propriety of venue for each defendant because it was

### 2. RICO Conspiracy Claim (Count 2)

Second, the SAC also fails to state a RICO conspiracy claim. Section 1962(d) of RICO makes it "unlawful for any person to conspire to violate [the RICO statute]." 18 U.S.C. § 1962(d). To state a claim for a RICO conspiracy, a plaintiff must allege "the existence of an agreement to violate RICO's substantive provisions." *Williams v. Affinion Grp., LLC*, 889 F.3d 116, 124 (2d Cir. 2018). If a complaint fails to state a substantive RICO claim, it also fails to state a claim for RICO conspiracy. *See Johnson v. Nextel Commc'ns, Inc.*, 763 F. App'x 53, 56 (2d Cir. 2019) ("Since Plaintiffs' substantive RICO claim is deficient, Plaintiffs' RICO conspiracy claim also fails."). That is the case here, and accordingly, the RICO conspiracy claim is dismissed.

### B.  Aiding and Abetting Fraud

Next, the SAC fails to state a claim for aiding and abetting fraud. Claim Five alleges that the Bank Defendants and the Geng Defendants "have knowledge of [the Qiao Family Defendants'] fraud and have been knowingly providing substantial assistance to advance the fraud's commission" by providing banking, money transfer, and legal services. SAC ¶¶ 137-138. Under New York law,[7] "[t]o establish liability for aiding and abetting fraud . . . the plaintiffs must show (1) the existence of a fraud; (2) the defendant's knowledge of the fraud; and

---

clear that it had personal jurisdiction and that venue was proper for at least some defendants."); *Emery Wukendi Wafwana & Assocs., P.C. v. Mengara*, No. 20 Civ. 9788, 2022 WL 2392510, at *8 n.4 (S.D.N.Y. May 19, 2022) (recommending that a complaint be dismissed in its entirety for failure to state a claim, although certain defendants had not appeared), *adopted* 2022 WL 2392498 (S.D.N.Y. June 30, 2022).

[7] The parties cite to New York cases when discussing the aiding and abetting fraud claim and such implicit consent is sufficient to establish choice of law. *See Cambridge Cap. LLC v. Ruby Has LLC*, 675 F. Supp. 3d 363, 416 (S.D.N.Y. 2023) ("A party may waive a choice of law argument or give implied consent sufficient to establish a choice of law when it assumes in its briefs that a particular jurisdiction's law applies").

(3) that the defendant provided substantial assistance to advance the fraud's commission." *Krys v. Pigott*, 749 F. 3d 117, 127 (2d Cir. 2014). "A plaintiff alleging an aiding-and-abetting fraud claim must allege the existence of the underlying fraud, actual knowledge, and substantial assistance." *Oster v. Kirschner*, 905 N.Y.S.2d 69, 72 (App. Div. 2010).

The SAC does not state a claim for aiding and abetting fraud. "In asserting claims of fraud—including claims for aiding and abetting fraud . . . —a complaint is required to plead the circumstances that allegedly constitute fraud 'with particularity.'" *Krys*, 749 F.3d at 129 (quoting Rule 9(b)). While Rule 9(b) allows a plaintiff to plead a defendant's knowledge "generally," Fed. R. Civ. P. 9(b), "'generally' is not the equivalent of conclusorily, . . . [and] plaintiffs must still plead the events which they claim give rise to an inference of knowledge." *Krys*, 749 F.3d at 129 (quoting Rule 9(b)). The SAC alleges that the Bank Defendants and the Geng Defendants "have knowledge of the fraud." SAC ¶¶ 137-138. Elsewhere, it also states that the scale of the Qiao Family Defendants' transfers "would have raised a red flag," but HSBC USA, HSBC Canada, UBS USA, and U.S. Bank ignored any such signs. *Id.* ¶ 84. This is insufficient to allege actual knowledge, particularly due to the lack of any reference to specific events that would suggest the Bank Defendants' and Geng Defendants' knowledge. *See Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 293 (2d Cir. 2006) (affirming dismissal of an aiding and abetting fraud claim where "[a]lthough the plaintiffs conclusorily allege that the banks had actual knowledge, . . . [and] [t]he plaintiffs allege in detail that the banks knew that [the fraudster] engaged in improper conduct that would warrant [attorney] discipline," these allegations were not enough to "give rise to the strong inference required by [Rule] 9(b), of actual knowledge of his outright looting of client funds"). The aiding and abetting fraud claim is dismissed.

15

### C.     Geng Defendants' Counterclaim

On November 21, 2023, the Geng Defendants filed an answer and counterclaim. *See* ECF No. 46.[8] The counterclaim is labeled "Frivolous Lawsuit," and seeks as relief the attorneys' fees expended by the Geng Defendants in defending against Plaintiff's lawsuit. *See id.* ¶ 71. Plaintiff moves to dismiss this counterclaim. *See* ECF No. 98. In their opposition to Plaintiff's motion, the Geng Defendants argue in substance that Plaintiff should be subject to sanctions issued under 28 U.S.C. § 1927 and the Court's inherent power. *See* Opp'n to Pl.'s Mot. to Dismiss Countercl. 3, ECF No. 120.

Plaintiff's motion to dismiss the counterclaim is granted because a counterclaim is not the appropriate vehicle through which to seek sanctions. Section 1927 does not provide an independent cause of action, because it is intended to "punish an attorney who conducts frivolous or dilatory litigation by awarding the other side compensation as part of the costs in the litigation." *Cresswell v. Sullivan & Cromwell*, 922 F.2d 60, 69 (2d Cir. 1990) ("Nor may federal question jurisdiction be premised on § 1927, for that section does not appear to authorize an independent lawsuit."); *accord Bright View Trading Co., Inc. v. Park*, No. 03 Civ. 2330, 2004 WL 2071976, at *10 (S.D.N.Y. Sept. 16, 2004) ("28 U.S.C. § 1927 is not an independent cause of action. Instead, it is a sanction that may be imposed, upon a proper showing, at the conclusion of the litigation."). Similarly, that the Court has inherent powers to manage litigation does not provide a basis for a counterclaim, and the Geng Defendants provide no examples of such a

---

[8] The Geng Defendants answered and counterclaimed prior to filing the instant motion to dismiss. *See* ECF No. 46. When a defendant files a motion to dismiss under Rule 12(b)(6) after filing an answer, a district court is required to construe the motion to dismiss as a motion for judgment on the pleadings under Rule 12(c), and such motions are subject to the same standards as motions to dismiss. *See Patel v. Contemporary Classics of Beverly Hills*, 259 F.3d 123, 126 (2d Cir. 2001).

standalone claim. *Cf. United States v. Seltzer*, 227 F.3d 36, 42 (2d Cir. 2000) (describing a district court's inherent power "to police the conduct of attorneys acting on behalf of litigants . . . [and] as officers of the court").

As discussed below, Plaintiff will be given the opportunity to seek leave to file a Third Amended Complaint ("TAC") that fixes the deficiencies outline above. Therefore, although this Opinion and Order dismisses all claims against the Geng Defendants, it is premature to determine whether Plaintiff's claims against the Geng Defendants are so frivolous as to be sanctionable. When Plaintiff's claims against the Geng Defendants are fully resolved (whether through Plaintiff declining to seek leave to file a TAC, the denial such leave, or further proceedings), the Geng Defendants may renew their request for sanctions under § 1927, the Court's inherent power, or any other source of sanctions power.

## CONCLUSION

For the reasons given above, Moving Defendants' motions are **GRANTED**. Claims One and Two (the RICO claims) and Claim Five (the aiding and abetting fraud claim) are **DISMISSED**. Plaintiff's motion to dismiss the Geng Defendants' counterclaim is **GRANTED**. Plaintiff's request for oral argument is **DENIED**, as moot.

Plaintiff seeks leave to amend. *See* Pl.'s Opp'n to HSBC USA & UBS USA Mot. to Dismiss 1-2, ECF No. 108; Pl.'s Opp'n to U.S. Bank Mot. to Dismiss 2, ECF No. 109 (incorporating by reference Plaintiff's opposition to HSBC USA and UBS USA's motion to dismiss); Pl.'s Opp'n to Geng Defs.' Mot. to Dismiss 2, ECF No. 110. Although Plaintiff has amended his Complaint twice, the amendments thus far made changes unrelated to the substance of Plaintiff's claims. Under Rule 15(a)(2), courts "should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2); *see also Loreley Financing (Jersey) No. 3 Ltd. v. Wells Fargo Secs., LLC*, 797 F.3d 160, 190 (2d Cir. 2015) ("[T]he court treated Plaintiffs'

decision to stand by the complaint after a preview of Defendants' arguments—in the critical absence of a definitive ruling—as a forfeiture of the protections afforded by Rule 15. This was, in our view, premature and inconsistent . . ."). Plaintiff shall file a letter motion seeking leave to further amend his Complaint by **October 14, 2024**. Plaintiff's letter shall explain how his proposed TAC resolves the deficiencies identified in this Opinion. Plaintiff shall attach the proposed TAC with a redline showing all changes from the SAC. If Plaintiff files such a letter motion, any Defendants named in the SAC will have the opportunity to respond. If no such letter motion is filed, all claims against the Moving Defendants will be dismissed with prejudice and the case will proceed against the remaining Defendants (the Qiao Family Defendants and Jane Doe).

    The Clerk of Court is respectfully directed to close the motions at ECF Nos. 83, 87, 94, and 98.

    SO ORDERED.

Dated: September 23, 2024
       New York, New York

                            DALE E. HO
                       United States District Judge